UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HELEN PARRISH,<br><br>                    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | No. CV-13-3034-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

   BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 19, 21.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Jeffrey E. Staples represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

**JURISDICTION**

   Plaintiff Helen Parrish (plaintiff) protectively filed for supplemental security income (SSI) on December 18, 2009. (Tr. 123.) Plaintiff alleged an onset date of September 12, 2006.[1] (Tr. 135, 142.) Benefits were denied initially and on reconsideration. (Tr. 78, 87.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ James W. Sherry on November 9, 2011. (Tr. 43-75.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 53-68.) Vocational expert K. Diane Kramer also testified. (Tr. 68-74.) The ALJ denied benefits (Tr. 20-36) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

---

[1] Under Title XVI, benefits are not payable before the date of application. 20 C.F.R.§§ 416.305, 416.330(a); S.S.R. 83-20.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 41 years old at the time of the hearing. (Tr. 53.) She graduated from high school with a "special diploma." (Tr. 54.) She attended special education classes. (Tr. 55.) She worked briefly at a seasonal job picking flowers. (Tr. 57.) Her legs go numb and tingle from the waist down. (Tr. 59-60.) Her doctor prescribed a walker which prevents her from falling. (Tr. 60.) She would fall daily or at least two to three times per week without the walker. (Tr. 60.) Her legs bother her all the time. (Tr. 61.) If she can elevate her legs, they do not bother her as much, so she lies down a couple of hours each day. (Tr. 61.) She has hypothyroidism. (Tr. 61-62.) She is tired all the time and has no energy. (Tr. 62.) She is depressed. (Tr. 62.) Her depression is getting worse. (Tr. 65.) She isolates herself two or three times per day. (Tr. 62.) She has a difficult time being around people. (Tr. 62-63.) She forgets how to do things and needs reminders. (Tr. 63-64.) She has carpal tunnel and muscle spasms in her hands. (Tr. 60-61, 64.) Physical therapy did not help. (Tr. 65.) She takes medication which only helps sometimes. (Tr. 65.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).

"[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since December 18, 2009, the application date. (Tr. 22.) At step two, the ALJ found plaintiff has the following severe impairments: lumbar degenerative disc

disease with facet degenerative changes, hypothyroidism, hypertension, obesity, depression, bereavement, and anxiety (Tr. 22.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 28.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). She can stand and/or walk about 2 hours in an 8-hour day. She can sit about 6 hours in an 8-hour day. She is capable of pushing/pulling within sedentary weight restrictions. She can occasionally climb ramps or stairs, but should never climb ladders, ropes or scaffolds. She can occasionally engage in balancing, stooping, crouching, kneeling or crawling. She should avoid concentrated exposure to unprotected heights or use of moving machinery. She is capable of simple, routine, and repetitive tasks and simple decision-making. She is capable of few, if any changes in the work setting. She is capable of superficial social interaction with the general public, coworkers, or supervisors.

(Tr. 29-30). At step four, the ALJ found plaintiff has no past relevant work. (Tr. 34.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 34.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since December 18, 2009, the date the application was filed. (Tr. 35.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to find plaintiff meets a listing; (2) improperly rejecting the opinions of treating source; (3) finding plaintiff's allegations were not credible; and (4) discrediting corroborating lay witness evidence; and (5) concluding plaintiff can perform work existing in the national economy. (ECF No. 19 at 8-24.) Defendant argues the ALJ: (1) properly determined plaintiff did not meet or equal the requirements for a listed impairment; (2) properly assessed plaintiff's credibility; (3) reasonably weighed the medical evidence; (4) properly assessed the lay witness statements; and (5) properly supported the step five finding. (ECF No. 21 at 2-17.)

**DISCUSSION**

**1.    Step Three**

Plaintiff argues the ALJ erred at step three of the sequential evaluation process by failing to find plaintiff meets the listing for mental retardation. Plaintiff argues she meets the criteria for disability due to mental retardation under listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1. The listings include the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. 20 C.F.R. § 404.1526. Plaintiff bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If plaintiff meets the listed criteria for disability, she is presumed to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ found plaintiff does not meet or medically equal the criteria of listings 12.04 and 12.06, but does not mention or appear to have considered listing 12.05C.

There are three elements which must be established for a step three disability finding under listing 12.05C: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. 20 C.F.R. Part 404, Subpt. P, App. 1; *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The only element of listing 12.05C at issue is the first prong: establishment of subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22.[2]

Plaintiff argues the first element of listing 12.05C is established by plaintiff's testimony and statements that she graduated from high school in a special education program. (ECF No. 19 at 8-9, Tr. 24, 308, 346, 497.) Defendant first argues the only evidence plaintiff was involved in special education is her unreliable self-report. (ECF No. 21 at 3-4.) The ALJ's credibility finding was not supported by legally sufficient reasoning, discussed *infra*. Even if the ALJ's credibility

---

[2] The record reflects a verbal comprehension score of 63 measured by Carrie Bishop, MA Ed., within the range required to meet the second prong of listing 12.05C. (Tr. 346.) According to the introduction to listing 12.00, the third prong of listing 12.05C is met by a finding of another severe impairment under 20 C.F.R. §§ 404.1520(e) and 416.920(c), consistent with *Fanning v. Bowen*, 827 F.2d 631, 633 n.3 (9th Cir. 1987). The ALJ identified a number of severe impairments and therefore the third element of listing 12.05C is established. The only element of listing 12.05C challenged by defendant is the first element, establishment of subaverage intellectual functioning before age 22.

finding were legally sufficient, the finding is limited to plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms. (Tr. 31.) The ALJ did not question plaintiff's reported background or history, and plaintiff consistently reported receiving a "special diploma" and participation in special education classes. (Tr. 54-55, 308, 346, 497.)

Defendant also argues there is no evidence establishing the deficits justifying plaintiff's participation in special education. It is not clear from the record that plaintiff's statements regarding participation in special education establish the findings necessary to meet listing 12.05C. Therefore, there is an ambiguity in the record. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). Because there is an ambiguity in the record which could be essential to the determination of disability, the matter must be remanded for further development of the record with respect to plaintiff's special education background. On remand, the ALJ should make additional step three findings regarding listing 12.05C.

**2.      Credibility**

Plaintiff argues the ALJ erred in finding plaintiff's symptom allegations are not credible. (ECF No. 19 at 17-20.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d

341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible. (Tr. 31.) The ALJ gave several reason for the credibility finding. (Tr. 31-32.)

First, the ALJ found plaintiff is doing well with her depression, despite her claims otherwise at the hearing. (Tr. 31.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ pointed out plaintiff testified she is extremely limited physically and mentally, spending hours in bed every day and relying on her roommate to help her remember her appointments and chores. (Tr. 31, 59, 61.) Plaintiff also testified she feels like emotionally she is getting worse. (Tr. 62, 64.) The ALJ acknowledged an April 2010 assessment by Ms. Mondragon, MSW, which concluded plaintiff was experiencing bereavement after the loss of her

husband which affected her concentration and judgment. (Tr. 31, 342-44.) However, the ALJ pointed out that by June 2010 plaintiff was experiencing significant improvement in her depression. (Tr. 31, 306.) In September 2010, she told Dr. Snyder her depression and anxiety were well-controlled and Dr. Strosahl reported she was stable and doing very well despite a stressful living situation. (Tr. 435-36.) The ALJ also observed subsequent treatment notes from Dr. Strosahl noted plaintiff was doing "very well overall" (December 2010, April 2011) and was "quite stable" (April 2011). (Tr. 413, 415, 420.) The ALJ pointed out bereavement is a process with ups and downs but the record reflects plaintiff was doing well with her depression, despite her claims otherwise at the hearing. (Tr. 31.)

Notwithstanding, the ALJ failed to consider records suggesting ongoing difficulties with depression and anxiety. In August 2010, plaintiff had a mild upsurge in depression and some PTSD, but ultimately responded to a medication adjustment. (Tr. 442, 446.) In October 2010, plaintiff had increased depression due to relationship issues and was struggling with depression and anxiety. (Tr. 434.) In June 2011, Dr. Strosahl noted that while plaintiff was stable on her antidepressant medication, she was getting more and more preoccupied with the elimination of pain rather than living life. (Tr. 406.) In August 2011, plaintiff's depression was getting worse and she was moody in response to pain and inactivity. (Tr. 402.) Her chronic pain was contributing to her depression and creating a vicious cycle. (Tr. 402.) Plaintiff's testimony in November 2011 that her depression was worsening is consistent with the last few records from Dr. Strosahl. Thus, while the ALJ is correct that plaintiff's depression and anxiety may go up and down, it was not reasonable to conclude plaintiff is over her bereavement and her depression is consistently stable.

The second reason mentioned by the ALJ to justify the negative credibility finding is the record reflects plaintiff's activities exceed the more limited activities she testified to at the hearing. (Tr. 31-32.) It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* Yet daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits

involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ observed plaintiff was her husband's primary caregiver before he died around August 2009; she was bicycling, taking care of her yard, walking, and spending time with her 11-year old in August 2010; she engaged in outdoor activities and delivered newspapers in February 2011; participated in Work Source Program in March 2011; walked about 12 blocks in April 2011; took a trip to Florida in April or May 2011 where she reported fishing and going on day trips; and in May 2011 was doing physically active things in the yard and playing with her daughter. (Tr. 32.)

      While in some circumstances some of these activities may be seen as inconsistent with claims of disability, in this case it is not clear that plaintiff was engaging in activities consistent with full-time work. First, in August 2010, plaintiff said she *believed that she could begin* bicycling, taking care of her yard, walking, and spending more time with her children, not that she had been doing those activities. (Tr. 443.) Second, there is no evidence about the length of time or plaintiff's involvement in newspaper delivery with her roommate, which may have been as limited as riding in a car for a short route a few times per week. (Tr. 416.) "Outdoor activities" is vague and does not necessarily suggest significant exertion inconsistent with disability. The ALJ impermissibly extrapolated details not based on the record as evidence undermining plaintiff's credibility. Third, plaintiff's participation in Work Source is not necessarily equivalent to full-time work; even if it were equivalent, there is no evidence in the record establishing plaintiff was successful in the Work Source Program. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007.) The ALJ's finding regarding plaintiff's daily activities is not supported by substantial evidence and therefore this is not a clear and convincing reason justifying the negative credibility finding.

      Next, the ALJ asserted there are many inconsistencies in the longitudinal record. (Tr. 32.) A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. The ALJ pointed out plaintiff testified to significant symptoms associated with hypothyroidism, but denied symptoms in the medical record. (Tr. 32, 61-62, 293, 301, 440, 441, 496.) However, plaintiff's testimony about hypothyroidism was that her thyroid is out of control and that she is tired and lacking energy. (Tr. 62.) This is consistent with Dr. Snyder's findings in August and September 2011 that she has "profound and resistant hypothyroid," "profoundly

elevated TSH" despite compliance with high doses of medication, and her "hypothyroidism continues to be out of control." (Tr. 397-98, 400.) Plaintiff's statements are consistent with her physician's findings and therefore the hypothyroid testimony does not reasonably reflect a lack of credibility.

The ALJ also noted plaintiff denied arrhythmias in August 2010 when Dr. Snyder expressed concern that medication might trigger them, but later that month plaintiff reported intermittent palpitations about three times per week, which was noted to be the first time the issue was raised. (Tr. 32.) Although the ALJ did not state what conclusion was drawn from these facts, presumably the ALJ concluded once arrhythmias were suggested to plaintiff as a possible side effect, plaintiff developed palpitations. This conclusion is not supported by the evidence. In July 2010, Dr. Seiler was concerned about how much Synthroid plaintiff was getting because plaintiff may not have been compliant with medication. (Tr. 299.) Dr. Seiler advised her to be compliant and warned her that such a high dose of Synthroid can cause arrhythmias. (Tr. 299.) On August 5, 2010, plaintiff reported to Dr. Snyder she had been compliant with Synthroid and she was having palpations intermittently, on average 3 times per week. (Tr. 296.) Dr. Snyder noted plaintiff took Butalbital as needed for palpitations but it did not cause them to stop. (Tr. 296.) Dr. Snyder also noted this was the first time plaintiff brought up palpitations. (Tr. 297.) Dr. Snyder told her to reduce Synthroid intake and stop Butalbital which is not indicated for palpitations and "may bear relation to hypothyroidism."[3] (Tr. 297.) At the next visit with Dr. Snyder on August 19, 2010, plaintiff had complied with the change in medication and "denied the palpitations that she had been experiencing, which we believe may have been caused by her high intake of levothyroxine [Synthroid]." (Tr. 293.) The evidence suggests that once plaintiff was compliant with the high dose of Synthroid, she experienced an expected side effect of the medication. Once the medication was reduced, the palpations resolved. There is no reasonable interpretation of this evidence that reflects negatively on plaintiff's credibility.

As other evidence of inconsistency in the longitudinal record, the ALJ cited Exhibit C10F and pointed out that in December 2009 plaintiff's roommate reported she was declining very rapidly after finding out her brother had terminal cancer, yet treatment notes in January 2011

---

[3] Dr. Snyder wrote, "Butalbital, which she believes she is taking for palpitations, has a side effect of increasing TSH and decreasing T3T4. She has been taking this medication prior to levothyroxine [Synthroid]." (Tr. 297.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

indicate she was doing very well overall and was feeling quite optimistic about an upcoming visit with her brother. (Tr. 32.) Presumably the ALJ intended to reference an October 2010 note by Dr. Strosahl which states, "Her friend notes that Helen has been down since finding out that her brother seems to have a terminal case of emphysema and is declining very rapidly."[4] (Tr. 430.) The plain reading of this note indicates that it is the brother who is declining very rapidly, not plaintiff as the ALJ interpreted. This is confirmed by a December 2010 note which states, "She states that he [her brother] has been reassuring her that nothing in the way of an acute health crisis is in the mix for him." (Tr. 420.) Dr. Strosahl found her to be stable but recommended continued monitoring of her depression. (Tr. 420.) Plaintiff planned to visit her brother in March 2011. (Tr. 420.) Because the ALJ misinterpreted the evidence suggesting plaintiff's mental state was rapidly declining, this is not an inconsistency in the record reflecting negatively on plaintiff's credibility.

      The ALJ also pointed out that on March 7, 2011, plaintiff told Dr. Strosahl she decided to delay her trip to Florida for another month because a DSHS caseworker "thought this was some sort of vacation." (Tr. 32.) The ALJ interpreted this to mean plaintiff "was very attuned to receiving disability benefits" and found it "inconsistent with her claims of cognitive difficulties." (Tr. 32.) However, the record states, "She was asked not to take vacation while she is actively participating in the Work Source Program."[5] (Tr. 414.) Plaintiff appears to have attempted to comply with a request from DSHS in order to participate in a program she hoped to benefit from. It is not clear how this is inconsistent with her claim for disability or reflects any significant cognitive function in excess of the limitations claimed. Further, the ALJ suggests plaintiff is less than credible and insinuates plaintiff is motivated by secondary gain because one physician thought she was "angling for disability" and because she has sought disability multiple times over the years. (Tr. 32, 430.) The court fails to see how this is indicative of a lack of credibility and finds no authority supporting such a conclusion.

      Other inconsistencies asserted by the ALJ include a note by Dr. Snyder that she prescribed a walker for plaintiff at her request, although, according to the ALJ, "it does not appear she felt it was medically necessary" and "did not think insurance would pay for it." (Tr.

---

[4] There is no medical record dated December 2009 and none of the December 2010 records mention anything similar to the October 2010 note.

[5] On April 18, 2011, plaintiff reported "she had a wonderful trip to Florida over the last four weeks." (Tr. 413.) This suggests plaintiff took the trip sometime in March after all.

32.) Again, the ALJ overstates the record, as Dr. Snyder actually informed plaintiff that "insurance may or may not pay for a walker." (Tr. 405.) The ALJ is correct that Dr. Snyder stated "so far we have been unable to determine an organic cause of Helen's illness," but also noted at that time plaintiff had not participated in physical therapy or been examined by a neurologist. (Tr. 405.) It was not reasonable for the ALJ to conclude from Dr. Snyder's comments that the walker was not necessary because ultimately Dr. Snyder did prescribe a walker. (Tr. 405.) *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (stating an ALJ "may not assume doctors routinely lie in order to help their patients collect disability benefits").

Based on the foregoing, the ALJ failed to identify substantial evidence justifying the assertion that there are significant inconsistencies throughout the record. Further, the other reasons cited by the ALJ are inadequately supported. The ALJ erroneously interpreted some evidence and made unreasonable conclusions about other evidence. As a result, the credibility finding is inadequate as a matter of fact and law. On remand, the ALJ should reconsider the credibility finding.

**3.     Medical Opinions**

Plaintiff argues the ALJ improperly rejected the opinions of plaintiff's treating sources. (ECF No. 19 at 12-16.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

      a.      Dr. Anderson

Plaintiff argues the ALJ improperly rejected Dr. Anderson's opinion. (ECF No. 19 at 13-14.) Dr. Anderson completed a Medical Report form dated December 6, 2011. (Tr. 537-38.) He diagnosed lumbar back pain/neuropathy and noted diminished sensation in her feet and pain over the lumbar area. (Tr. 537.) He indicated plaintiff needs to lie down 2-3 times per day and has some fatigue and depression. (Tr. 537.) Dr. Anderson noted significant pain during the day made worse with movement and opined she would be likely to miss four or more days per month during a 40-hour work week. (Tr. 538.) He also noted these symptoms had been present since 2003. (Tr. 538.)

The ALJ rejected Dr. Anderson's opinion because "objective evidence to support total disability is not present" and suggests the opinion is not well supported by clinical and laboratory diagnostic techniques. (Tr. 33.) An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Anderson's findings appear to be based on a one-time exam are not supported by an exam or office visit notes. There is no evidence Dr. Anderson reviewed any records, test results or images in making his conclusions. The ALJ reasonably concluded Dr. Anderson's findings are not well supported and this is a specific, legitimate reason supported by substantial evidence for rejecting the opinion.

      b.      Dr. Strosahl

Plaintiff argues the ALJ improperly rejected Dr. Strosahl's opinion. (ECF No. 19 at 14-16.) In February 2011, Dr. Strosahl, plaintiff's treating psychologist, completed a DSHS Documentation Request for Medical or Disability Condition form. (Tr. 338-40.) Dr. Strosahl noted plaintiff's issues include chronic treatment for refractory depression and co-ocurring bi-polar II symptoms. (Tr. 338.) Dr. Strosahl opined plaintiff has difficulties with concentration, memory, and cognitive processing which interfere with learning new job skills. (Tr. 338.) He indicated plaintiff has mood swings which get worse under stress or during interpersonal

interactions. (Tr. 338.) She also has very significant social anxiety which causes difficulties interaction with peers and customers. (Tr. 338.) He opined plaintiff would have a difficult time seeking and maintain a job due to difficulties with cognitive and emotional processing. (Tr. 338.)

The ALJ rejected Dr. Strosahl's opinion because the opinion is not supported by Dr. Strosahl's treatment notes. (Tr. 34.) A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). According to the ALJ, Dr. Strosahl's notes indicate plaintiff was involved in a variety of activities and her anxiety and depression were stable and were not noted to cause significant limitations in social functioning. (Tr. 34.) As discussed *supra*, the ALJ's conclusions regarding the activity evidence and the stability of plaintiff's depression are flawed. As a result, the reason given for rejecting Dr. Strosahl's finding is not a specific, legitimate reason supported by substantial evidence.

**4.    Lay Witness**

Plaintiff argues the ALJ erred by discrediting lay witness testimony corroborating plaintiff's symptom allegations. (ECF No. 19 at 20-22.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The record contains a Florida Department of Health Supplemental Third Party Pain Questionnaire and a Social Security Administration Function Report form completed by plaintiff's friend, Diana L. Ervin, in January 2010. (Tr. 136-38, 150-57.) Ms. Ervin reported spending every day with plaintiff to try to help her get things done. (Tr. 150.) She noted plaintiff "tries to do things" but cannot stand or walk for long periods of time due to headaches, pain in her feet and legs, and her hands give out. (Tr. 137-38, 150-53.) Ms. Ervin also reported plaintiff receives help with bathing, all household activities, yard work, and shopping either from Ms. Ervin, her daughter, or a nephew. (Tr. 137, 151-52.)

The ALJ noted Ms. Ervin's reports are consistent with plaintiff's testimony, but rejected Ms. Ervin's statements because they are not consistent with objective evidence which does not

support the level of assistance reported to have been provided to plaintiff. (Tr. 32-33.) An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). The ALJ asserted that Ms. Ervin's statement is inconsistent with the evidence "outlined in detail below." (Tr. 33.) The ALJ did not discuss the evidence as it relates to the statement or otherwise show that this reason is germane to Ms. Ervin's statement. Further, since the ALJ concluded the statement is consistent with plaintiff's testimony and the negative credibility determination was inadequate, Ms. Ervin's statement must be reconsidered.

## CONCLUSION

The ALJ's decision is not suppo`rted by substantial evidence and free of legal error. On remand, the ALJ should develop the record with regarding to plaintiff's educational history and reassess the step three findings. The ALJ should also reconsider the credibility finding and the medical opinion and lay witness evidence.

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(ECF No. 19)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.   Defendant's Motion for Summary Judgment **(ECF No. 21)** is **DENIED**.

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED June 2, 2014

*s/ Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16